## UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE: ) | |
| ) | Chapter 7 |
| MICHAEL J. WALTER and CAROL ) | |
| D. WALTER, ) | |
| ) | Bankruptcy No. 10-03352 |
| DEBTORS. ) | |
| ) | |
| DAVID A. SERGEANT, in his capacity ) | |
| as CHAPTER 7 TRUSTEE, ) | |
| ) | |
| PLAINTIFF, ) | Adversary No. 11-09024 |
| ) | |
| v. ) | |
| ) | |
| ONEWEST BANK, FSB, ) | |
| ) | |
| DEFENDANTS. ) | |

### RULING ON PLAINTIFF'S MOTION FOR (PARTIAL) SUMMARY JUDGMENT (ECF DOC. NO. 32) AND DEFENDANT ONEWEST BANK'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF DOC. NO. 42)

This matter came before the Court on Plaintiff/Trustee David A. Sergeant's

Motion for (Partial) Summary Judgment and Defendant, OneWest Bank's Cross-

Motion for Partial Summary Judgment. The Court held a telephonic hearing. Eric

Lam appeared on behalf of Plaintiff and Jason Palmer appeared on behalf of

Defendant. The Court took the matters under advisement. These are core

proceedings under 28 U.S.C. § 157(2)(A) and (O).

**STATEMENT OF THE CASE**

Plaintiff, the Chapter 7 Trustee, seeks summary judgment on Count III of the

Adversary Complaint entitled "Invalidity and Unenforceability of the Deeds of

Trust as to Carol."  Plaintiff requests the Court to declare that Debtor/Carol

Walter's pledge of her interest in an expensive property located in Missouri—by

virtue of two Deeds of Trust—are unenforceable, void, invalid, or otherwise

defective.  Plaintiff seeks a decree that Carol's interest in the property is preserved

free and clear of any and all liens Defendant may assert.  Plaintiff argues Missouri

Supreme Court case law, specifically <u>Finnerty v. John S. Blake & Bros. Realty</u>

<u>Co.</u>, 207 S.W. 772 (Mo. 1918), holds that there is insufficient consideration as a

matter of law to support the Deed of Trust in this case.  Defendant disagrees and

argues the <u>Finnerty</u> case is either not good law or is distinguishable from this case.

The Court denies both Plaintiff's Motion for (Partial) Summary Judgment and

Defendant's Cross-Motion for Partial Summary Judgment.  The Court concludes

that on the question of the existence of consideration critical facts are in dispute or

not sufficiently developed in this record.

**BACKGROUND**

Michael J. Walter and Carol D. Walter were married in 1974.  In March

1995, Michael and Carol bought a second, non-homestead house in Osage Beach,

Missouri (the "Missouri Property").  They paid approximately $435,000.00.  The

purchase of the Missouri Property was financed in part by Central Bank of the Lake of the Ozarks ("Central Bank").  Debtors granted Central Bank a mortgage against the Missouri Property.

In 1995, Michael sold his interest in a company then-known as All States Quality Foods, located in Charles City, Iowa for more than $1,000,000.00.  With some of the money from this sale, Michael and Carol added improvements to the Missouri Property, including a three-stall garage and a deck.  These improvements cost in excess of $300,000.00.  They also paid off the mortgage Central Bank held.

In 2001, Michael bought a bar in Charles City, Iowa.  He operated it as J.P. Sisson's and Retlaw's.  He made the purchase through one or more legal entities including Retlaw's Riverside Sports Bar & Grille, L.C.  Michael and Carol held a joint ownership interest in Retlaw's Riverside.  Debtors' Bankruptcy Petition lists Retlaw's Riverside Sports Bar & Grille and John W. Enterprises as jointly owned property.  In order to finance the purchase, Michael obtained a loan from First Citizens National Bank (First Citizens).

On November 9, 2001, Carol signed a Guaranty with First Citizens which stated in part:

> For good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, and to induce FIRST CITIZENS NATIONAL BANK (herein, with its participants, successors and assigns, called "Lender"), at its option, at any time or from time to time to make loans or extend other accommodations to or for the account of Michael J. Walter dba JP Sisson's (herein called

3

"Borrower") or to engage in any other transactions with Borrower, the Undersigned hereby absolutely and unconditionally guarantees to Lender the full and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise, of the debts, liabilities and obligations described as follows:

. . . .

B.  If this [x] is checked, the Undersigned guarantees to Lender the payment and performance of each and every debt, liability and obligation of every type and description which Borrower may now or at any time hereafter owe to Lender (where such debt, liability or obligation now exists or is hereafter created or incurred, and whether it is or may be direct or indirect, due or to become due, absolute or contingent, primary or secondary, liquidated or unliquidated, or joint, several, or joint and several; all such debts, liabilities and obligations being hereinafter collectively referred to as the "Indebtedness"). Without limitation, this guaranty includes all indebtedness.

(Debtors' Exh. F, ECF Doc. No. 40-1, at 8.)  On February 27, 2003, Carol had

signed another similar guarantee.  (Debtors' Exh. G, ECF Doc. No. 40-1, at 10.)

Michael and the two limited liability companies operated both bars.  They

used Debtors' personal savings and sales of various personal assets in doing so.

Plaintiff suggests that Michael and Carol were using their own assets to operate the

bar and restaurant businesses because the bar and restaurant businesses were not

cash flowing by themselves.

On or about June 6, 2003, Michael and Carol executed a "Balloon Note" in

the amount of $425,812.00 with First Citizens.  This note was secured by the

Missouri Property.   On or about March 21, 2005, both Michael and Carol executed

a promissory note in the amount of $90,000.00 with First Citizens.  This joint

promissory note was also secured by the Missouri Property.

4

Sometime in 2005, Michael purchased another bar and restaurant in Clear Lake, Iowa. The purchase was made through John W. Enterprises, L.C., d/b/a Retlaw's at the Lake—another company he and Carol also jointly owned according to the filed Bankruptcy schedule. Also, on October 13, 2005, Carol filed a Fictitious Name Resolution with the Iowa Secretary of State. She certified that she was a corporate member/secretary of John W. Enterprises. On August 15, 2008, Carol filed a Resolution of Domestic Limited Liability Company Adopting Fictitious Names in Iowa with the Iowa Secretary of State again certifying that she was a corporate member/secretary of John W. Enterprises. Michael personally guaranteed the debts due First Citizens National Bank, which provided financing to the bar in Clear Lake.

On July 13, 2006, Michael signed a $1,000,000.00 promissory note in favor of IndyMac Bank. Carol did not sign this note. Plaintiff alleges IndyMac Bank approached Michael with the $1,000,000.00 loan offer. It made the offer on the strength of an appraisal showing the Missouri Property was worth $1,600,000.00. IndyMac Bank did not request tax returns from Michael or Carol or otherwise analyze Debtors' finances. The Uniform Residential Loan Application showed Michael was applying for the loan to refinance the Missouri Property. (Exh. H, ECF Doc. No. 10-1, at 12.)

To secure the $1,000,000.00 loan from IndyMac, Michael and Carol signed a Deed of Trust in favor of IndyMac on the Missouri Property. That Deed of Trust was recorded on July 20, 2006. Michael used the $1,000,000.00 loan proceeds from IndyMac for numerous expenses. Michael used approximately $471,708.07 to pay off the 2003 and 2005 First Citizens' mortgages against the Missouri Property. Michael used the money remaining to operate the bar and restaurant businesses in Charles City and/or Clear Lake. Trustee alleges Michael used at least $7,000.00 per month to make monthly installment payments to IndyMac. Trustee thus alleges, "IndyMac loaned Michael $1,000,000.00, and Michael used part of the loan proceeds" to make the monthly payment of $7,000.00 due IndyMac.

On September 28, 2006, Michael signed another note with IndyMac. This was a $150,000.00 Home Equity Line of Credit (HELOC). Carol did not sign the note for the HELOC loan. About a week later, on October 5, 2006, Carol and Michael signed a second Deed of Trust against the Missouri Property in favor of IndyMac. This secured the $150,000.00 HELOC loan. This Deed of Trust was recorded in 2007.

The first numbered paragraph of the HELOC Deed of Trust states the grantors are: "Michael J. Walter and Carol D. Walter Husband and Wife." (Exh. S, ECF Doc. # 40-4.) Michael and Carol's signatures on the HELOC Deed of Trust

6

are notarized.  (Id. at 33.)  The HELOC Deed of Trust states that each of the

grantors "irrevocably grants, bargains, sells, and conveys to Trustee" the Missouri

Property for the purpose of securing repayment of the loan obtained by Michael.

(Id. at 29.)  The HELOC Deed of Trust in Paragraph 13, pertaining to co-signers,

states:

> 13. JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS;
> SUCCESSORS AND ASSIGNS BOUND. All duties under this
> Security Instrument are joint and individual.  If Grantor signs this
> Security Instrument but does not sign an evidence of debt, Grantor
> does so only to mortgage Grantor's interest in the Property to secure
> payment of the Secured Debt and Grantor does not agree to be
> personally liable on the Secured Debt.  If the Security Instrument
> secures a guaranty between Lender and Grantor, Grantor agrees to
> waive any rights that may prevent Lender from bringing any action or
> claim against Grantor or any party indebted under the obligation.
> These rights may include, but are not limited to, any anti-deficiency or
> one-action laws.  The duties and benefits of the successors and assigns
> of Grantor and Lender.

(HELOC Deed of Trust.)

The Deed of Trust for the $1,000,000.00 IndyMac loan was recorded on July

20, 2006.  The Deed of Trust described the Missouri Property as follows:

> All of the following described land lying above contour elevation 662
> feet: All of Lot 1 of WALTERS SUBDIVISION, a subdivision in
> Camden County, Missouri according to the plat thereof on file and of
> record in the Office of the Recorder of Deeds, Camden County,
> Missouri.

(Deed of Trust.)  As of the date that Michael signed the Deed of Trust the correct

legal description for the Missouri Property was:

All of Lot 2 of HARL and WALTER SUBDIVISION, a subdivision
of Camden County, Missouri according to the plat thereof on file and
of record as Plat Book 90, page 32, Camden County Recorder's
Office.

The HELOC went into default on November 25, 2009. The $1,000,000.00
Note went into default on December 1, 2009. On December 17, 2010, Mike and
Carol filed a voluntary Chapter 7 Petition. Plaintiff, David A. Sergeant, is the
Chapter 7 Trustee.

Defendant OneWest Bank, FSB is now the assignee, holder, and owner of
the $1,000,000.00 IndyMac note, the HELOC note, and the two Deeds of Trust.
On September 7, 2010, Defendant filed a Petition for Reformation of Deed of Trust
against the Missouri Property to correct the legal description error.

This Court granted relief from the automatic stay as to the HELOC note on
February 16, 2011 to allow the Missouri deed reformation in action to go forward
and allow for a sale. The Missouri Property was sold at a non-judicial foreclosure
in Missouri on November 2, 2011, for approximately $567,000.00.

The Deed of Trust was reformed on April 13, 2011, to correct the legal
description, by order of the Circuit Court of Camden County, State of Missouri.
The "DEFINITIONS" section of the Deed of Trust defines the term "Borrower" as
"Michael Walter and Carol D. Walter husband and wife. Borrower is the Trustor
under this Security Instrument." On the signature page of the Deed of Trust, Carol
is identified as "Borrower" below the line where her signature appears. Michael

8

and Carol's signatures on the Deed of Trust are notarized.  The "Recording

Coversheet" for the Deed of Trust states as follows: "Name of Grantor(s): Michael

Walter and Carol D Walter husband and wife."  The Deed of Trust states that each

of the borrowers "irrevocably grants, bargains, sells, conveys and confirms to

Trustee" the Missouri Property for the purpose of securing repayment of the loan

obtained by Michael.  The Deed of Trust includes a provision, at Paragraph 13,

pertaining to co-signers, which states as follows:

> 13. **Joint and Several Liability; Co-signers; Successors and
> Assigns Bound.** Borrower covenants and agrees that Borrower's
> obligation and liability shall be joint and several.  However, any
> Borrower who co-signs this Security Instrument but does not execute
> the Note (a "co-signer"): (a) is co-signing this Security Instrument
> only to mortgage, grant and convey the co-signer's interest in the
> Property under the terms of this Security Instrument; (b) is not
> personally obligated to pay the sums secured by this Security
> Instrument; and (c) agrees that Lender and any other Borrower can
> agree to extend, modify, forbear or make any accommodations with
> regard to the terms of this Security Instrument or the Note without the
> co-signer's consent.

(Deed of Trust.)

On May 3, 2011, Plaintiff filed a Complaint to Avoid Transfer, for

Declaratory Judgment, and for Other Relief.  Count III of the Complaint alleges

that the Deed of Trust is unenforceable as to Carol.  Plaintiff alleged:

> 34. As indicated, Carol did not sign either the initial $1,000,000.00
> IndyMac note, or the subsequent $150,000.00 HELOC note.  Carol
> did sign the Deed of Trust associated with the $1,000,000.00 initial
> loan from IndyMac, and Carol did sign the subsequent HELOC Deed
> of Trust.

9

35. Because Carol was not liable to IndyMac on either the $1,000,000.00 or the $150,000.00 loans, Carol did not receive consideration in exchange for the pledge of her interest in the Missouri Property.

36. Carol's pledge of her interest in the Missouri Property therefore was invalid and unenforceable as a matter of law, because of lack of consideration and otherwise.

37. Pursuant to 11 U.S.C. § 558, the Trustee and the estate are entitled to and enjoy the benefit of any defenses that may be available to Carol, as against the two Deeds of Trust.

(Complaint, ECF Doc. No. 1, at 7.)

Plaintiff filed a Motion for (Partial) Summary Judgment requesting the Court to issue an order declaring "that Carol's pledge of her interests in the Missouri Property, by virtue of the two Deeds of Trust associated with the $1,000,000.00 IndyMac loan and the subsequent $150,000.00 HELOC loan from IndyMac are unenforceable, void, invalid, or otherwise defective." Plaintiff asked the order to decree and preserve "Carol's interests in the Missouri Property, free and clear of any and all liens of the Defendant, such that the Trustee and the estate may administer Carol's otherwise free and clear interest in the Missouri Property, for the sole benefit of the estate." Plaintiff also requested any other relief the Court feels is just and proper under the circumstances. Defendant resists the Motion for (Partial) Summary Judgment and has filed a Cross-Motion for Partial Summary Judgment.

## THE PARTIES' ARGUMENTS

Plaintiff's Motion for (Partial) Summary Judgment argues that under Missouri law judgment must be entered in favor of Plaintiff on Count III.  Plaintiff argues that the Missouri Supreme Court's ruling in <u>Finnerty v. John S. Blake & Bro. Realty Co.</u>, 207 S.W. 772, 773 (Mo. 1918), dictates this result and holds where one spouse does not sign the promissory note supporting the loan, the deed of trust is unenforceable against that spouse for lack of consideration.  Plaintiff argues:

> While the <u>Finnerty</u> lender presented no evidence that the wife knew of the note signed by her husband, <u>Finnerty</u> turned <u>not</u> on the wife's knowledge of the debt incurred by the husband.  Lender was 'not authorized, merely by reason of the language of the deed of trust and its formal execution by the [wife], in attempting to subject [the wife's] interest in the real property to sale to satisfy the note.' <u>Id.</u>

(Mt. S.J. Brief, ECF Doc. No. 33, at 3.)  Plaintiff requests the Court declare that "Defendant has no lien, claim, or interest in the real estate with street address of 740 Passover Road, Osage Beach, Missouri, as to Carol D. Walter's and the bankruptcy estate's interest therein."  (Mt. S.J., ECF Doc. No. 32, at 1–2.)

Defendant argues—in resistance to Plaintiff's motion and in support of its own motion—the Deed of Trust is valid and enforceable as a matter of law.  Defendant argues that Plaintiff's reliance on <u>Finnerty</u> is misplaced because <u>Finnerty</u> is antiquated and factually distinguishable.  Defendant argues:

Most importantly, the Deed of Trust involved in the present case contains a key provision that does not appear to have been present in Finnerty—specifically the Deed of Trust contains a provision explicitly addressing circumstances where a party co-signs the Deed of Trust but does not execute the underlying promissory note. Plaintiff fails to account for, or even make any mention of, this significant and dispositive provision in the Motion for Summary Judgment and Brief. The present case is further factually distinguishable as it concerns the actual consideration received by the spouse that did not sign the Deed of Trust. In Finnerty, the wife who did not sign the Deed of Trust did not receive any of the loan proceeds. However, in the present case it is undisputed that preexisting loans that Carol was obligated to repay, totaling $471,708.07, were paid off with the loan proceeds obtained from IndyMac.

(Resistance to Mt. S.J., ECF Doc. No. 41, at 6.)  In distinguishing Finnerty,

Defendant argued:

[O]ne of—if not the most—important fact[s] in distinguishing Finnerty from the present case, is there is no indication the deed of trust at issue in Finnerty contained a similar 'co-signer' provision. See Finnerty, 207 S.W. at 773–74. Due to this important distinction between Finnerty and the present case, application of Finnerty to the present case should be rejected.

(Resistance to Mt. S.J., ECF Doc. No. 41, at 9.)  Defendant further argues it is a

holder in due course of the note and thus the defense of lack of consideration and

any other personal defense of Carol are invalid as a matter of law.  In support of its

position that the Deed of Trust is valid and enforceable Defendant also cites the

Missouri Bankruptcy Court's opinion in In re Suhrheinrich, Bankr. No. 08-30823,

2009 WL 3335027 (Bankr. W.D. Mo. Oct. 14, 2009).  Defendant claims that

decision addressed the identical issue before the Court and upheld the deed of trust.

12

Plaintiff's Reply—supporting his motion and resisting Defendant's motion—again argues that the Missouri Supreme Court's decision in <u>Finnerty</u> is controlling on this issue.  Plaintiff argues <u>Suhrheinrich</u> is not controlling because it is a federal bankruptcy court decision and does not trump the Missouri Supreme Court's decision in <u>Finnerty</u>.  Plaintiff also argues that paragraph thirteen (13) must be read in conjunction with paragraph sixteen (16) which provides that the Deed of Trust is to be controlled by the law of the jurisdiction where the property is located.  In this case Missouri law is the law of the jurisdiction where the property is, and thus <u>Finnerty</u> is controlling.  As to the holder in due course argument, Plaintiff argues the Deed of Trust is not an "instrument" and thus the holder in due course argument is not a proper basis for decision.

## CONCLUSIONS OF LAW AND DISCUSSION

### A. Summary Judgment

Summary judgment is governed by Rule 7056 of the Federal Rule of Bankruptcy Procedure.  Rule 7056 applies Federal Rule of Civil Procedure 56 in adversary proceedings.  Rule 56 states, in relevant part, that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The granting of "[s]ummary judgment is proper if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the

nonmovant, no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law." Hayek v. City of St. Paul, 488 F.3d 1049, 1054 (8th Cir. 2007). Summary judgment is appropriate when only questions of law are involved. Anderson v. Hess Co., 649 F.3d 891, 894 (8th Cir. 2011).

The burden of showing there are no genuine issues of material fact belongs to the moving party. Winthrop Res. Corp. v. Eaton Hydraulics, Inc., 361 F.3d 465, 468 (8th Cir. 2004). "Once the movant has supported the motion, the non-moving party 'must affirmatively show that a material issue of fact remains in dispute and may not simply rest on the hope of discrediting the movant's evidence at trial.'" In re Houston, 385 B.R. 268, 271 (Bankr. N.D. Iowa 2008) (quoting Barge v. Anheuser-Busch, Inc., 87 F.3d 256, 260 (8th Cir. 1996)).

"A 'material' fact is one 'that might affect the outcome of the suit under the governing law . . . .'" Johnson v. Crooks, 326 F.3d 995, 1005 (8th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). An issue of material fact is genuine if a reasonable fact-finder could return a verdict for the nonmoving party on the question. Anderson v. Liberty Lobby, Inc., 477 U.S. at 252. Evidence that raises only "some metaphysical doubt as to the material facts" does not create a genuine issue of fact. Matsushita Elec. Indus. Co. v. Zenith Radio, Corp., 475 U.S. 573, 586 (1986). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

14

genuine issue for trial.'" <u>In re Patch</u>, 526 F.3d 1176, 1180 (8th Cir. 2008) (quoting

<u>Matsushita Elec. Indus. Co.</u>, 475 U.S. at 587).

## B. <u>Finnerty</u> and the Deed of Trust

"'A deed of trust is a conveyance from the landowner (the 'grantor' or

'mortgagor') to a trustee, for the limited purpose of securing an obligation owing

to the beneficiary of the trust (the 'mortgagee').'" <u>U.S. Bank Nat'l Ass'n v. Cox</u>,

341 S.W.3d 846, 854 (Mo. Ct. App. 2011) (quoting 18 Timothy Tryniecki,

<u>Missouri Practice: Missouri Real Estate Law—Transactions and Disputes</u> sec.

16:1, at 297 (3d ed. 2006)).  The resolution of issues concerning deeds of trust

hinges on contract interpretation.

> The first step in interpreting . . . [a] deed of trust is to "ascertain the
> intent of the parties by looking at the words of the [deed of trust] and
> giving those words their plain, ordinary, and usual meaning."
> <u>Ethridge v. TierOne Bank</u>, 226 S.W.3d 127, 131 (Mo. Banc. 2007).
> "The 'intent of the parties is determined based on the [deed of trust]
> alone unless the [deed of trust] is ambiguous.'" <u>Id.</u> (quoting <u>Trimble</u>
> <u>v. Pracna</u>, 167 S.W.3d 706, 714 (Mo. Banc. 2005)).  "'Language is
> ambiguous if it is reasonably open to different constructions.'" <u>Id.</u>
> (quoting <u>Seeck v. Geico Gen. Ins. Co.</u>, 212 S.W.3d 129, 132 (Mo.
> Banc. 2007)).

<u>Melson v. Traxler</u>, 356 S.W.3d 264, 270 (Mo. Ct. App. 2011).

Plaintiff relies almost entirely on <u>Finnerty</u>.  In that case, Kate Finnerty

brought an equity action seeking to enjoin the sale of real property under a deed of

trust she executed with her husband Thomas Finnerty.  <u>Finnerty</u>, 207 S.W. at 772.

The key facts follow:

The property in question was conveyed on February 10, 1908, by John Finnerty and wife to Thomas Finnerty and wife. On April 1, 1908, Thomas Finnerty and the respondent, his wife, executed a deed of trust on the property to Gustave Dammert, trustee, party of the second part, and Lillie Willemsen, party of the third part, to secure a note for $6,000, dated April 1, 1908, payable to the order of Lillie Willemsen three years after date, together with six interest notes for $150, each payable respectively in 6, 12, 18, 24, 30, and 36 months after date. There was no consideration for these notes. The deed of trust was signed by Thomas Finnerty and Kate Finnerty; the notes were signed by Thomas Finnerty alone. The deed of trust in describing the notes recites that Thomas Finnerty and Kate Finnerty were indebted to the payee in the note in the sum of $6,000 for borrowed money. Upon the deed of trust and notes being executed, and the latter indorsed in blank, without recourse, by Lillie Willemsen, they were turned over to Thomas Finnerty. He had the deed of trust duly recorded. Thereafter, the notes and deed of trust continued in his manual possession, and under his legal control, until the maturity of the notes, in April 1911, when he caused an extension to be written upon the back of the principal note for five years from April 1, 1911, provided 10 interest notes, each for $150, executed by him and payable to the order of Lillie Willemsen every successive six months thereafter, were paid when due. These extension interest notes were also indorsed in blank by Lillie Willemsen without recourse, and returned to Thomas Finnerty, and, with the principal note and deed of trust, continued in his possession and under his control until October 16, 1911, when he purchased from one J.N. Crebs a saloon and contents, including the leasehold on the corner of Ninth and Locust streets, city of St. Louis, for the sum of $6,000, paying for it in monthly notes of $125 each, signed by Thomas Finnerty and payable to the order of J.N. Crebs. To secure these monthly notes, Thomas Finnerty pledged to Crebs, as collateral, the $6,000 Willemsen note and the deed of trust securing the payment of said note, and executed to Crebs an agreement, authorizing him upon default in the payment of any of the monthly notes to sell the collateral, either with or without notice.

Thomas Finnerty thereupon took possession of the saloon, operated it, and paid a number of the monthly notes as they became due. Crebs thereafter sold the unpaid notes to appellant John S. Blake & Bros. Realty Company (hereinafter designated as Blake & Bro.),

> for approximately their full value, to wit, about $4,000, and transferred to them the Willemsen $6,000 note and deed of trust and the contract pledging same to secure the payment of the unpaid monthly notes.
>
> In March, 1913, after the transfer to Blake & Bros., Thomas Finnerty defaulted in the payment of the monthly notes; and upon written notice to him of their intention, in accordance with the terms of the pledge agreement, Blake & Bro. advertised and sold at public sale the $6,000 note and deed of trust, and at said sale became the purchasers of same for the sum of $2,500.

Finnerty, 207 S.W. at 772–73.  There was no evidence that Mrs. Finnerty had any knowledge of her husband signing the $6,000 note or any later transactions transferring the note.  Id. at 773.  Mr. Finnerty testified that he never discussed these matters with his wife.  Id.

Mrs. Finnerty argued she was not liable on the Deed of Trust she signed for several reasons:

> First, that she executed the deed of trust at the request of her husband to assist him at that time in engaging in business; second, that there was no debt then created or pre-existing, the payment of which the deed was given to secure; and third, that she neither made nor intended to make a note at that time; and that she had no knowledge of the extension of the time of payment of the notes by her husband and of their having been pledged by him three years later with the deed of trust to secure the payment of the obligations incurred by him in the purchase of the saloon from Crebs.

Id. at 773.  The Court found: "[B]ecause it was not her debt, the general language of the conveyance which purported to transfer her interest to the trustee was ineffectual to create a debt in being based upon no consideration."  Id.

17

Finnerty has not been overruled and appears to be good law.  Plaintiff here

argues that Finnerty essentially establishes that when a party signs a deed of trust,

but not the note creating the debt, the deed of trust cannot be enforced against that

party as a matter of law.

Defendant argues this is not the case for several reasons.  Defendant argues

that Finnerty is distinguishable from the present case on its facts.  Defendant

argues that nothing suggests Carol was unaware of the notes or that she was

unaware of what she was signing when she signed the Deed of Trust.  Defendant

points out Carol received a benefit from signing the Deed of Trust.  The Deed of

Trust allowed the loan to be made and that loan money retired significant debt on

which Carol was undisputedly personally liable.  This included paying off the old

note on the Missouri Property and some of the business debt.  Thus, Defendant

asserts there was consideration for Carol's signature on the Deed of Trust.

Moreover, Defendant argues paragraph 13 of the Deed of Trust Carol Walter

signed is significantly different from the one signed in Finnerty.  It provides:

> **13. Joint and Several Liability; Co-signers; Successors and
> Assigns Bound.**  Borrower covenants and agrees that Borrower's
> obligations and liability shall be joint and several.  However, any
> Borrower who co-signs this Security Instrument but does not execute
> the Note (a "co-signer"): (a) is co-signing this Security Instrument
> only to mortgage, grant and convey the co-signer's interest in the
> Property under the terms of this Security Instrument; (b) is not
> personally obligated to pay the sums secured by this Security
> Instrument; and (c) agrees that Lender and any other Borrower can
> agree to extend, modify, forbear or make any accommodations with

18

> regard to the terms of this Security Instrument or the Note without the co-signer's consent.
>
> Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

(Deed of Trust, ECF Doc. No. 35-1, at 27 ¶ 13.) Defendant argues this language allows the Deed of Trust to be enforced without further reference to <u>Finnerty</u>, or without need for additional consideration.

Plaintiff argues in response that <u>Finnerty</u> establishes a clear rule on consideration—that when the note is not signed there is no consideration to support the deed of trust. Plaintiff also argues that paragraph 13 is limited by paragraph 16 which makes Missouri law—and <u>Finnerty</u> applicable to override Defendant's argument.

The Court concludes there are genuine issues of material fact that prevent summary judgment for either side on this issue. In reaching this conclusion, the Court rejects the Plaintiff's argument that <u>Finnerty</u> establishes a bright-line rule that when a party does not sign a note, there is necessarily no consideration supporting the deed of trust.

19

Instead of establishing a bright-line rule with regard to the note, the Court reads Finnerty as establishing that a deed of trust is only valid if there is consideration. The court in Finnerty pointed out Mrs. Finnerty did not know of the arrangements her husband made or the note he signed. Mr. Finnerty similarly testified that he did not discuss those arrangements with her. There is no evidence Mrs. Finnerty received anything of any value at all from signing of the Deed of Trust. Finnerty concluded that liability could not be established merely by language and assumptions—"but must be supported by facts." 207 S.W. at 773–74. The court concluded it could not assume Mrs. Finnerty intended to enter into joint liability with her husband "in the absence of any evidence to that effect" and when there "appears to have been no consideration." Id.

The Court also points to Kurtz v. Fischer, 600 S.W.2d 642 (Mo. Ct. App. 1980), a case from Missouri decided more than 60 years after Finnerty. There, parents of a son that had embezzled funds from his employee signed a deed of trust for the employer to guarantee a note their son had entered into to repay employer. Id. at 644–45. The parents later claimed that the deed of trust they signed to guarantee a note they did not sign, was unenforceable for lack of consideration. Id. The Court concluded, based on the whole record, that the deed of trust was supported by consideration in the form of additional time extended for the son to

20

repay.  Id. at 646–47.  If the bright-line rule Plaintiff argues for here was the law

under Finnerty, the Court could not have reached that conclusion.

The Court concludes these Missouri cases indicate a deed of trust must be

supported by consideration.  The facts in the record that bear on the question are in

dispute.  In particular, the record remains unclear whether Carol signed the Deed of

Trust in order to receive the benefits of the loan.

While the Court recognizes that paragraph 13 of the note Carol signed

appears to be different from the note signed in Finnerty, the Court is unclear what

effect, if any, this has on the question of consideration based on all the facts.

Moreover, Missouri case law is controlling under paragraph 16 of the Deed of

Trust, and seems to lead back to the case specific and fact specific consideration

analysis found in Missouri cases as noted above.

The Court also concludes the Suhrheinrich decision from the United

Bankruptcy Court for the Western District of Missouri is inapplicable.  While it

does address similar underlying facts—one spouse signed the note and both

spouses signed the deed of trust—it does not address Finnerty or the consideration

issue raised here.  In fact, the discussion dealt entirely with the question of whether

the deed of trust was properly executed to be a binding deed of trust.  The Court

may, in fact, have decided the case differently if the same arguments were raised

there that are present in this case.  Moreover, the Court in Suhrheinrich also

21

expressly relied on the testimony and exposed intention of the spouse that signed only the deed of trust and not the note.  No such testimony is a part of this summary judgment record.  In Suhrheinrich, the Court also pointed out that even "slight" distinctions in the facts of these cases can make all the difference in the analysis and result.  2009 WL 3335027 at *2.  This Court agrees.

Defendants assertion of MO. REV. STAT. § 431.020 is not dispositive for similar reasons.  Even assuming for the sake of analysis that the statute applies, it still leaves open a material question of fact that is not resolved on this record.  Even under that statute, lack of consideration is relevant but the party claiming lack of consideration bears the burden of proof.  Gibson v. Harl, 857 S.W.2d 260, 267–68 (Mo. App. 1993).  The Court concludes the issue of consideration has been raised and the burden of proof on that issue does not resolve the issue as a matter of law on this record.

## C.      Defendant's Holder in Due Course Arguments

Defendant has also argued that Plaintiff's arguments about lack of consideration for the Deed of Trust fail as a matter of law because Defendant is a holder in due course.  Defendant argues that as a holder in due course, a Missouri statute renders the consideration argument invalid.  Defendant believes that Plaintiff argues that statute is inapplicable.

The Court will not address and resolve those arguments in this Ruling.

Defendant has recently filed another motion for summary judgment on this issue

and others.  Defendant reasserts and elaborates upon this argument in the new

moving papers.  Plaintiff has not yet filed his resistance.  The Court will defer

ruling on this issue now and will address it in the new filing.

**WHEREFORE**, Plaintiff David A. Sergeant's Motion for Summary

Judgment as to Count III (ECF Doc. No. 32) is **DENIED**.

**FURTHER,** the Court defers Ruling on Defendant's Cross-Motion for

Partial Summary Judgment (ECF Doc. No. 42) and it will be taken upon with

Defendant's new Motion for Summary Judgment (ECF Doc. No. 60).

**FURTHER,** a telephonic status conference is scheduled for **November 9, 2012 at 3:15 p.m.**   Plaintiff's counsel is responsible for placing the call.  This hearing will be digitally recorded.

Dated and Entered:  October 19, 2012

**THAD J. COLLINS**
**CHIEF BANKRUPTCY JUDGE**